IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **BECKEY ROBERTS,** § | | |
| § | | |
| **Plaintiff** § | | |
| § | | |
| vs. § | 7:12-CV-199-O-KA | |
| § | | |
| **CAROLYN W. COLVIN,** § | | |
| **COMMISSIONER OF SOCIAL** § | | |
| **SECURITY ADMINISTRATION,** § | | |
| § | | |
| **Defendant** § | | |

## REPORT AND RECOMMENDATION

By Order Referring Case (Docket No. 3) this case was referred to the undersigned United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b) and Rule 72 of the Federal Rules of Civil Procedure for hearing, if necessary, and recommendation or determination. This is a Social Security appeal whereby Plaintiff Beckey Roberts ("Roberts") seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).

Background

Plaintiff Roberts alleges that she is disabled as a result of a number of disabling conditions. In the filing of her application for disability and supplemental security income ("SSI") benefits she listed her impairments as "hearing loss, arthritis in back, numbness in legs and herniated discs in her neck and her low back."(AR.150)[1]. She claimed an on-set date of

---

[1] The Administrative Record was filed electronically in two volumes with consecutive numbered pages which will be cited herein as "AR." References to the transcript of the administrative hearing will be cited herein as "TR."

1

February 12, 2006 (AR. 117, 121) when she quit working due to a fall from a chair that injured her neck and upper and lower back.   After her applications were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ").  That hearing was held on May 18, 2011. The ALJ issued his decision on September 9, 2011 finding that Roberts was not disabled within the meaning of the Social Security Act and thus was not entitled to benefits. (AR 12-18). The Appeals Council denied her request for review by an Order dated September 21, 2012, and thus, the decision of the ALJ became the final decision of the Commissioner.

## The Decision

In his decision, the ALJ analyzed Roberts' claim pursuant to the familiar five-step sequential evaluation process.[2] At step one, the ALJ determined that Roberts had not engaged in substantial gainful activity since her alleged onset date. (AR 14). At step two the ALJ determined that plaintiff  demonstrated a combination of three severe impairments consisting of "discogenic and degenerative disorders of the cervical and lumbar spine (status post-cervical fusion at C5-C7), diabetes mellitus, hypertension, and obesity" but found that the combination did not meet or medically equal the listed impairments for presumptive disability.(AR 14).  So, the ALJ proceeded to determine Roberts's residual functional capacity (RFC) to perform work at the light exertional level finding that Roberts retained the functional capacity to perform a wide

---

[2]   (1) Is the claimant currently working? (2) Does she have a severe impairment? (3) Does the impairment meet or equal an impairment listed in Appendix 1? (4) Does the impairment prevent her from performing her past relevant work? (5) Does the impairment prevent her from doing any other work? 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

range of "light work"[3] but with several physical limitations. The ALJ determined that Roberts could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; but could never climb ropes, ladders, or scaffolds; nor could she perform work overhead; could frequently, but not constantly, use her upper extremities for reaching, handling, and fingering; and required a sit/stand option about every 30 minutes. (AR 15-17).  At step four, using vocational expert testimony, the ALJ determined that Roberts could perform her past relevant work as retail sales clerk and a child care worker. (AR 17, TR 48-52). Therefore, the ALJ concluded that Roberts was not disabled within the meaning of the Act at any time through the date of his decision. (AR 17).

### Judicial Standards of Review

The standards for judicial review of final decisions of the Commissioner of Social Security are set out and well articulated in Magistrate Judge Cureton's order in *Seibert v. Astrue*, 2010 WL 6389303 (N.D. Tex. 2011).  They not be repeated here but have been considered.

### Appeal Issues

Roberts raised five areas of dispute regarding the ALJ's decision: 1)  Roberts' "hearing loss," 2) The effects of Roberts' obesity impairment, 3) The severity and effects of Roberts' pain, 4) Roberts' credibility, and 5) ALJ's wrong RFC finding.  With respect to Roberts' hearing loss, Roberts claims that since the ALJ simply never addressed Roberts' hearing loss in his

---

[3]   As defined in the regulations "light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine tat he or she can also do sedentary work, unless there are additional limiting factors such ass loss of fine dexterity or inability to sit for long periods of time.

decision, one can only speculate as to how that hearing loss may have (or did not) affect the ALJ's determination of Roberts' RFC.  As to Roberts' severe obesity manifested in the abnormal size of her breasts, the ALJ improperly discounted Roberts' treating neurosurgeon's conclusion that her macromastia (abnormally large breast size) contributed to her back pain arising from her identified back conditions.  As to the effects of Roberts' pain, Roberts claims that the ALJ apparently discounted the effects of her back pain on making his RFC determination since the ALJ failed to make or discuss the pain, refer to SSR 95-5 or the *Luna* provisions.[4] As to his credibility finding that Roberts' statements concerning the intensity, persistence and limiting effects of her pain were not credible, Roberts asserts that the ALJ got the credibility wrong. Finally, Roberts contends that the evidence just does not support the ALJ's RFC finding that Roberts could perform nationally available"light work"and is thus not disabled.

Absence of Findings on Hearing Loss Impairment

The Commissioner concedes that the ALJ did not address Roberts' hearing loss in his decision but asserts that the error was harmless since Roberts did not identify any work-related limitations resulting from her hearing impairment.  What then is the effect of the fact that the ALJ did not address Roberts's hearing loss impairment at all in his decision?  Was it missed, overlooked or ignored?  Is it, as Roberts argues, for the court to imply findings that the ALJ did not make or to find that the ALJ failed to develop the record fairly and adequately? Or is it, as argued by the Commissioner, for the court to find that the error was harmless.

At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley v. Apfel,* 197 F.3d 194, 197–98 (5th Cir.1999).  This burden carries with it the burden of raising the proper issue concerning one's own condition that interferes with one's own

---

[4]      *Luna v. Bowen*, 834 F. 2d 161 (10th Cir. 1987).

capacity to work. At the very least, in the context of pursuing a disability claim the burden should fall to claimant to articulate at some point in the process some complaint to such a degree as to put the examiners[5] on notice to pursue the complaint further. Here, Roberts failed to complain as to how her hearing loss affected her ability to perform her prior work or any other the light work. She did not do so in her written submissions or at the hearing before the ALJ.

I find that Roberts failed to adequately raise an issue of an impairment arising from her hearing loss as to warrant further development of the record by the ALJ. There is simply no evidence in the record that Roberts's hearing loss had any effect on her ability to work in consideration of her age, education or work experience. Indeed, there is some evidence in the record that the hearing loss was ameliorated by her use of hearing aids while she was working. (AR 164). I conclude that the ALJ did not apply an incorrect standard in that there was no necessity for the ALJ to consider Roberts's hearing loss as an impairment (either singly or in combination with the three identified impairments) in the ALJ's step 3 or step 4 analysis.

Effects of Her Obesity

Roberts argues that the ALJ wrongly concluded that Roberts' obesity "was not a significant factor affecting her *other conditions*" since the ALJ failed to acknowledge that Roberts' own neurosurgeon opined that her macromastia was a contributing factor to her back pain (one of her "*other conditions*.") The Commissioner retorts that Roberts failed to show how her macromastia was "related " to her obesity. Besides, the ALJ *did* take Roberts' obesity (and, inferentially, her macromastia) into consideration in his recitation that it was taken into account "in the limitations assessed."

Where there are multiple impairments found, the regulations require that consideration be

given to the "combined effect of all . . . impairments without regard to whether any such impairment, if considered separately, should be of sufficient severity." 20 C.F.R. §404.1523. *Walker v. Secretary*, 980 F. 2d 1066 (6th Cir. 1992). The medical evidence to which Roberts' argument refers indicates that Roberts' macromastia was a causative factor in Roberts' back pain, not a limiting impairment or condition itself. The ALJ did expressly recite that he took her obesity (with the accompanying macromastia) into account in the limitations on her capacity to perform "light work" and further that he did take into account Roberts' obesity in relation to her other conditions (diabetes and hypertension). The ALJ applied the proper standard and his findings are substantially supported by the evidence.

### Pain Analysis

Roberts argues that the ALJ wholly failed to perform a "pain analysis" as mandated by the regulations[6] and *Luna* provisions.[7] SSR 95-5 cited by Plaintiff has been expressly *superceded* by SSR 96-7p in 1996 responsive to the 8th Circuit's decision in *Polanski*[8] and the 10th Circuit's decision in *Luna*.

SSR 96-7p provides in pertinent part as follows:

"2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.
3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the

---

[6] SSR 95-5p.

[7] *Luna v. Bowen*, 834 F.2d 161 (10th Dir. 1987).

[8] *Polanski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)

6

> adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence."

The teaching of *Luna* and *Polanski* as reflected in SSR 96-7p is that the claimants' symptoms ( here, Roberts' back pain) is a element in the two separate considerations by the ALJ. First the ALJ must consider whether the claimant has a physical impairment that could reasonably be expected to produce the symptoms, ie. the pain of which the Roberts complains.[9] This is an *objective* determination made by looking at the medical evidence. At this stage the ALJ does not evaluate the degree, intensity or functional effects of the symptoms (here, Roberts' pain) and need not consider the *subjective* evidence of pain. Is there a medically determinable nexus between the symptom (here, Roberts' pain) and the identified condition (Roberts' discogenic and degenerative disorders of the cervical and lumbar spine)? If so, then the condition is an impairment. Here, the ALJ found such a nexus by finding that her back condition was a severe impairment.

Second, the ALJ must then look again to determine the debilitating nature of the claimant's pain. Or, as otherwise stated in the regulation, to determine the extent to which the intensity, severity, and any functional limitations effects of the pain affects the claimant's ability to do work. In making this determination SSR 96-7 mandates that the ALJ must look at the subjective evidence as well as the objective evidence. The subjective evidence is often the

---

[9] 42 U.S.C. § 423 (d) (5) (A) ". . .there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . ."

7

claimant's complaints and descriptions of the effects of the pain experienced. And here is where the claimant's credibility plays a part.

In this case it was Roberts' pain resulting from the condition of her neck and lumbar spine that is the identified "symptoms" as to which the ALJ was to consider and determine the functional effect. SSR 96-7p mandates the ALJ consider "the intensity, persistence, and functionally limiting effects of the symptoms [Roberts' back pain] . . . to determine the extent to which the symptoms [Roberts' back pain] affect the individual's [Robert's] ability to do basic work activities.

The teaching of *Polanski* and *Luna* as incorporated in SSR 96-7p is that in making this determination, the ALJ is to consider not only the objective evidence (such as the medical evidence in the file) but also subjective evidence (inclusive of Roberts own statements or descriptions) of the "intensity, severity, and functionally limiting effects of Roberts' back pain.

Whether expressed by a claimant in the claim filings or in the hearing testimony or not, there is an implied statement by each claimant (such as Roberts' in this case) that the pain from the neck and back conditions are so intense and/or so severe and/or so functionally limiting that the claimant (Roberts) can no longer perform <u>any</u> work available in the national economy, much less her own past work. This is understood as the very basis for a disability claim. But in this case, Roberts made statements regarding her pain beyond than implied from her making the disability application. Roberts' statements concerning her neck and back pain included in her disability review documents and her hearing testimony relate more to her perception of the functional limitations the pain causes or contributes to in her daily activities than to describing the pain's intensity or severity:

    1.    "Slow motivation... I have pain in my back and neck and it causes spasms

8

    in my legs...I cant sit move or drive very long...I have weakness in may arms and legs and shoulders...I cant hold on to things very long." AR 150.

2. "...I am stiff, swore (sic) and slow motivated getting started for the day."AR 156.
3. "I take medicine for my back, neck and check my blood sugar level." AR 156.
4. As to impact on her sleep: "restless, cant get comfortable, I hurt." AR 157
5. As to preparation of her own meals:  I sometimes just make I easy for me to get it over with by just pop in a frozen dinner or sandwich... I don't cook like I'd like......cant stand on feet for very long at time.  My back and neck gets week and arm have weakness." AR 158.
6. As to going outside:  1 or 2 day... sometime too cold...coldness makes my joints hurt."AR 159.
7. As to shopping:  "Sometime I don't even get to finish...I get to and out of breath..my legs give out." AR 159.
8: As to interests: " weekness on arm and legs wear I cant hold my grandbabies like I want." AR 160.
9. As to social activities: I need to get back onto being social again because I slow on moving legs arm and have weakness on arm." AR 161.[10]
10. "less motivated in doing daily tasks for the day, more pain in neck and back...also spasms in legs and arms stiff in neck and back." AR 186.
11. "I'm more in pain an get spasms on legs and back more now. My neck is more stiff on me. My hand go numb." AR 186.[11]

    Her father reported:

1. "She gets up, eats breakfast, sets or lays down and watches TV because her back is always hurting her" ... She's grumpy.  She has restless at night..can't get comfortable. She hurts"...Takes her a while to dress, hard for her to bend over.  Takes a while to get in or out of tub...Hard to raise arms to brush her hair..gives out..." ...Can't stand for long periods of time. Hard to bend over. AR 173-75.
2. "Hard for her to lift things, stand or walk for over 15 to 30 minutes.  Hard to move around because of pain she complains about." AR 177.
3. "She has trouble walking and standing for long periods of time.  She can't lift anything very heavy or bulky.  She can't pick up and hold her grandkids for very long.  She doesn't want to sit for very long because of her pain in her back and neck...because moving around causes considerable pain in her neck, back and legs and gives out if she is up and around for very long." AR 179[12]

---

[10]     Quotations from her Field Office Disability Report, AR-145-171.

[11]     Quotations from her Disability Appeals Report, AR 185-190.

[12]     Quotations from father's Function Report-Adult-Third Party, AR 172-181..

In making his analysis and assessment of how the intensity, severity, and functional limitations of Roberts' neck and back pain affected her functional capability to perform work (the task mandated by SSR 96-7p), the language of the ALJ's decision appears to indicate that he relied on the objective medical evidence as he had in making the impairment severity determination incident to his RFC assessment.  This implicates that he did not consider the subjective evidence of the intensity, severity and functional limitations of Roberts' pain as manifested in her statements and those of her father.  However, the ALJ did include elsewhere in his decision that he did consider the subjective evidence, but measured it against other non-medical evidence and found Roberts' statements not to be credible. Under SSR 96-7p the ALJ was required to look at the subjective evidence (including Roberts own descriptions) as well as the medical evidence. This he did.

There often is evidence of the intensity or severity of pain or the lack thereof beyond a claimant's own personal pain declarations such as:

1. Amount of Pain killers needed.

2. Persistence in trying to alleviate pain, ie. doctor trips

3. Willingness to follow pain relieving treatment, regimen, directives

4. Regular contact with doctor.

5. Effect on daily activities

6. Dosage, side effects, effectiveness, of medications.[13]

Each of these reflect how the claimant experiences the pain from the claimant's impairment. Such evidence may be characterized as either objective or subjective in nature. And there may be

---

[13]   *Luna*, p. 165-66.

subjective evidence as the functional effects of claimant's pain reflected in the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters.[14]

While the SSR 96-7p standard requires the ALJ to take both the objective evidence and the subjective evidence into account in making his disability determination, it does not require him to articulate and characterize each piece of evidence in his decision. Here the ALJ looked at and reported Roberts' own actions apart from her statements concerning her back pain:

    a.    "At a followup visit...she reported that...overall her pain was significantly better."
    b.    "She complained about continuing pain in her lumber spine....not related to her cervical pain."
    c.    "..she told her doctor that her pain had improved after surgery... but was worse now..."

The ALJ looked at and reported Roberts' compliance with treatment:

    a.    "Her neurosurgeon has advised facet blocks...not available with her indigent care."
    b.    "...she was advised to use muscle relaxants and anti-inflamatory (sic) medication..."

The ALJ looked at and reported Roberts' home activities:

    a.    "she is able to complete grooming responsibilities.."
    b.    ..is able...to do some household chores with ..assistance.."
    c.    " She does some cooking, relying on the microwave."
    d.    "She is able to drive by herself and drives to appointments and picks up her grandson at school."
    e.    "She calls friends...visits, shops occasionally..."[15]

As highlighted by the Commissioner in his brief, "Thus, the ALJ recognized that Roberts experienced pain and was treated for it."[16] Furthermore, the ALJ did review the medical and other evidence in the record before him and he did discuss in his decision how the medical and

---

[14] *Polanski*, p. 1325.

[15] AR 17.

[16] P. 6.

11

other evidence in the record conflicted with Roberts' claims as the severity, intensity and functional effect of the pain she experienced from her back impairment.  There is sufficient evidence in the record that the ALJ did not "disregard Roberts' statements about the severity and persistence of the pain she experienced "solely because they are [were] not substantiated by objective medical evidence;" rather, they were simply not substantiated by the non-medical evidence of Robert's own statements, actions and non-actions. There is substantial evidence in the record to support the ALJ's determination as the lack of debilitating effect of claimant's pain on her capacity to perform " light work."

### Credibility Determination

Roberts makes two arguments challenging the ALJ's credibility determination. First, that the ALJ did not *link* his conclusions regarding the medical evidence of Roberts' back injury impairment to Roberts' complaints regarding her pain. Second, that the ALJ made his credibility evaluation in the *wrong order* when he formulated his RFC conclusion before evaluating Roberts' complaints regarding her pain.

The Commissioner argues that clearly the ALJ did consider Robert's subjective pain complaints and their relationship to the medical evidence, thus making the disputed *link*. Further, since the ALJ made an express credibility determination, it is entitled to due deference by this court. As to the *order* in which the ALJ made his findings of RFC and credibility, the ALJ followed the proper formula style in drafting his decision.

On the first issue, the Commissioner's reply misses the mark.  Part of the problem is not with the ALJ's credibility determination *per se*, it is that in writing his decision he expressly tied that determination directly to his RFC determination rather than to the objective medical evidence of the severity of the pain from Robert's back impairment by stating:

"...the claimant's statements concerning the intensity, persistence and limiting

12

> effects of these symptoms [her back pain] are not credible to the extent they are inconsistent with the *above residual capacity assessment* [RFC]."

Secondly, in the ALJ's recitation of his RFC analysis he jumbled up the credibility determination factors mandated by SSR 96-7p. Rather than follow the analytical format for credibility determinations established in SSR 96-7p, the ALJ first acknowledged that Roberts had been somewhat limited by her back pain. Then, the ALJ discussed her lifestyle activities she could perform. Then the ALJ followed that by discussing Robert's back pain complaints as they related to and arose out of her history of back problems, treatments and surgery, how the cervical anterior diskectomy and fusion ameliorated the cervical back pain, and the fact that the lumber back pain persisted. Then further down his RFC analysis, the ALJ makes his credibility finding, noting the conflict between Robert's complaints as to the intensity and persistence of her back pain to the opinions of Dr. Kim Rowlands, one state medical consultant. These findings and discussions though touching on the some elements of credibility analysis mandated by the regulation are recited in patchwork fashion.

This is the main difficulty with the ALJ's credibility determination. The ALJ failed to clearly articulate the support for it in his written decision. Although the ALJ made gave lip service by express reference to the statutory[17] and regulatory[18] standards for the evaluation of Roberts' symptoms (here, back pain), he failed to follow the proscription of SSR 96-7P (4) that:

> "The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and *articulated* in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or *decision must contain specific reasons* for the finding on credibility, supported by the evidence in the case

---

[17]   20 C.F.R. § 404.1529

[18]   SSR 96-7P

13

record, and *must be sufficiently specific* to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision." (Emphasis supplied)

Nonetheless, this drafting/writing error aside, the ALJ's credibility finding is adequately supported by substantial evidence spread throughout the file and by his analysis. If the language of his decision be error, it is harmless error.

### RFC Finding

For the reasons stated in the Commissioner's Response Brief that are supported by substantial evidence in the record, I find that the ALJ's RFC finding is supported by substantial evidence.

### Conclusions and Recommendation

I conclude that the ALJ's RFC findings are supported by the evidence. I conclude that the ALJ's decision and conclusion that Roberts has not been under a disability is supported by the record and is correct. I recommend that the District Court AFFIRM the Commissioner's final decision and DISMISS Plaintiff's Complaint with prejudice.

It is so ORDERED, this 21st day of August, 2013.

_Robert K. Roach_
Robert K. Roach
UNITED STATES MAGISTRATE JUDGE

Standard Instruction to Litigants

       A copy of this report containing findings and recommendations shall be served on all parties in the manner provided by law.  Any party who objects to any part of this order, report, findings and recommendations must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).